# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BRIAN MILLER, | : | |
|     Petitioner, | : | Civ. No. 1:10-CV-0061 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| T.L. SNIEZEK, | : | (Magistrate Judge Smyser) |
|     Respondent | : | |

## MEMORANDUM ORDER

In an June 16, 2010 Order, this Court adopted the report and recommendation of Magistrate Judge J. Andrew Smyser dismissing Petitioner John Brian Miller's petition for a writ of habeas corpus. Presently pending before the Court is Petitioner's motion for reconsideration of that order. (Doc. No. 16.) Pursuant to the following analysis, the motion will be denied.

A motion for reconsideration is a device of limited utility. Its purpose is to correct manifest errors of law or fact or to present newly-discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate in instances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in

part on other grounds on reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)). It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation omitted).

The background of this case is set forth in this Court's June 16, 2010 Order, and need not be reiterated in its entirety. Petitioner's habeas petition claims that the Bureau of Prisons ("BOP") failed to properly consider him for twelve months of pre-release custody placement in a residential re-entry center ("RRC") pursuant to the Second Chance Act of 2007, 18 U.S.C. § 3624(c). Petitioner is due to be released, via Good Conduct Time, on August 7, 2011. He submitted a request to be considered for an RRC placement on July 22, 2009.

In this Court's review of Petitioner's motion for a writ of habeas corpus, the Court concluded that Petitioner exhausted his administrative remedies as to his July 22, 2009 RRC placement request because the timing for a response by the Central Office of the BOP had expired. (Doc. No. 15 at 3.) However, the Court held that the habeas writ should still be dismissed because when he filed his petition, Petitioner had not yet approached the last twelve months of his sentence whereby the Second Chance Act contemplated review by the BOP. See 18 U.S.C. § 3624(c) (stating that the BOP Director "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to

adjust to and prepare for . . . reentry . . . into the community"). In reaching this conclusion, the Court relied on past cases from within this judicial district that had found that, under the previous version of § 3624(c) which allowed for up to six months of RRC placement, "consideration of such placement [was] not required until the last six months of incarceration." See, e.g., Pacitti v. Lindsay, No. 3:06-cv-0783, 2006 WL 1274997, at *2 (M.D. Pa. May 8, 2006) (Caputo, J.); see also Rodriguez-Calderon v. Lindsay, No. 3:05-cv-2640, 2007 WL 2756878, at *2 (M.D. Pa. Sept. 20, 2007) (Vanaskie, J.) (finding that where a petitioner sought transfer to an RRC many months before he was eligible for such relief, the BOP did not err in summarily rejecting the petitioner's request); Murray v. Miner, No. 4:06-cv-2443, 2007 WL 465141, at *1 (M.D. Pa. Feb. 8, 2007) (McClure, J.) (adopting report and recommendation which found that, *inter alia*, even if petition asking for placement in a Community Confinement Center was ripe, it lacked merit because petitioner was still a year away from his release date and not yet within the last six months of his incarceration); White v. Hogsten, No. 1:06-cv-1088, 2006 WL 1878328, at *1 (M.D. Pa. July 6, 2006) (Conner, J.) (same).

In asking the Court to reconsider its decision, Petitioner argues that BOP Program Statement 7310.04 states that a request for RRC placement for a prisoner "shall be forwarded to the CCM at least 60 days prior to the maximum recommended range or date." (Doc. No. 16 at 1.) As a result, Petitioner takes issue with this Court's finding that the BOP is not required to consider Petitioner's placement until the last 12 months of his incarceration because "[i]f the BOP were to follow this REQUIREMENT or PROCEDURE as stated, NO PRISONER WOULD EVER EVEN SEE A FULL 12 MONTH PARTICIPATION IN SECOND CHANCE ACT PROGRAMMING OPPORTUNITIES, in violation of said law." (Doc. No. 16 at 2

3

(emphasis in original.)

The Court agrees with Petitioner that, had his request for RRC placement been filed closer to the maximum recommended range or date, it might warrant a different conclusion by this Court. The April 14, 2008 Department of Justice "Memorandum for Chief Executive Officers" directs that BOP staff "review inmates for pre-release RRC placements . . . 17-19 months before their projected release dates." (Doc. No. 6, Att. 1 at 3.) However, in the facts presented in this particular case, Petitioner filed his request for RRC placement on July 22, 2009, more than two years before his projected release date. Therefore, Petitioner was still many months away from when the Second Chance Act or internal Department of Justice guidelines would appropriately contemplate review by the BOP. See 18 U.S.C. § 3624(c).[1]

Because Petitioner's motion for reconsideration has neither pointed to any manifest errors of law or fact nor presented any newly-discovered evidence, the motion for reconsideration will be denied.

**ACCORDINGLY**, on this 9th day of August 2010, it is **HEREBY ORDERED THAT**

---

[1] The Court is not unaware that nearly seven months have expired since Petitioner's filing with the court, and the date on which Petitioner would be eligible for RRC placement, August 7, 2010, has now arrived. However, those were not the operative set of facts that faced the BOP when it received Petitioner's request in July 2009. Indeed, BOP officials repeatedly notified Petitioner that his request for RRC placement was premature for review. As stated in Magistrate Judge Smyser's report and recommendation, when Petitioner's administrative remedy request was denied on September 10, 2009, Warden Sniezek indicated that "inmates are not considered for RRC placement until they are 17-19 months from their projected release date and that a final determination regarding the length of the petitioner's placement [would] not be made until between January and March 2010." (Doc. No. 8 at 3.) When Petitioner's appeal was denied by the Regional Office on October 29, 2009, the Regional Director stated that "policy indicated that inmates are considered for RRC placement 17-19 months from their projected release date, [and] that the petitioner's need for community programs will be reexamined during that time frame . . . ." (Id. at 3-4.)

the motion for reconsideration (Doc. No. 16) is **DENIED**.  The case shall remain closed.

/s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania